UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:02CR236 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| MICHEL F. ABBOUD | ) | |
| | ) | **SENTENCING MEMORANDUM** |
| | ) | |
| Defendant. | ) | |
| | ) | |

The Sixth Circuit remanded this matter for a second resentencing. *See U.S. v. Abboud*, 308 Fed. Appx. 977 (6th Cir. 2009). The Court notes that in examining the issues raised on appeal, the Circuit found that this court had properly calculated the advisory guidelines offense level for Michel Abboud's convictions.[1]

> Defendant next argues that the district court erred in its calculation of the amount of funds laundered. The district court calculated the amount of funds laundered to be over $10 million. This is the amount of funds that were "bled" from the kite over the course of the check kiting scheme. Defendants used these funds to operate their business, in effect giving themselves a no-interest loan. This amount is independent from the amount of the bank fraud loss, which was calculated to be $2.3 million at the time the fraud was discovered.
>
> In determining the amount of funds laundered, the district court relied on the amounts contained in the money laundering counts of the indictment. The district court's factual determination is supported by the trial testimony of Special Agent David Morgan, who identified the financial transactions in the money laundering

---

1 For clarity, the Court will refer to Defendant Michel Abboud by his full name throughout this opinion.

> counts, and established that the funds involved were derived from the check kiting scheme. Therefore, the district court was not clearly erroneous in determining the amount of funds laundered.
>
> Defendant further argues that the district court erred in denying Defendant's request for an offense level reduction for acceptance of responsibility. Defendant had the burden of proving acceptance of responsibility by a preponderance of the evidence. *United States v. Gilbert*, 173 F.3d 974, 979 (6th Cir. 1999). The district court's determination that Defendant failed to meet that burden should be reversed "only for clear error, and great deference is afforded the court's determination in light of the credibility issues involved." *Id*. The district court found that Defendant continued to assert his innocence, which did not entitle him to a departure for acceptance of responsibility. Because an expression of innocence is inconsistent with acceptance of responsibility, the district court's determination was not clearly erroneous.
>
> …
>
> Therefore, the district court did not err in determining that Michel Abboud had an offense level of 30.

*Id.* at 981-82. The Circuit, however, concluded that this Court had improperly scored Michel Abboud's criminal history category. *Id.* at 983.

Following remand, this Court accepted briefing from the parties on the applicability of the U.S. Supreme Court's decision in *U.S. v. Santos*, 128 S.Ct. 2020 (2008). On May 28, 2009, this Court found *Santos* to be inapplicable. Doc. 415. The Court's prior analysis is hereby incorporated herein. Following that determination, the Court set the matter for resentencing and a hearing was held on July 23, 2009. During that hearing, Michel Abboud was sentenced to an aggregate sentence of 97 months incarceration. This memorandum will serve to supplement the Court's oral statements in support of its sentence.

**I. Advisory Guidelines**

As noted above, the Sixth Circuit found that this Court properly calculated the advisory guideline offense level Michel Abboud. The Court now accepts the Circuit Court's guidance and finds the criminal history category to be I.

During the hearing, Michel Abboud and his counsel were offered the opportunity to object to the Court's advisory guideline range. They declined to raise any argument other than those previously rejected by this Court and/or the Sixth Circuit. Accordingly, Michel Abboud's offense level is found to be 30 and his criminal history category is I. Accordingly, the advisory range for his offenses is 97 to 121 months.

## II. Departure

Michel Abboud's argument for a departure is not well taken. To the extent Michel seeks to minimize his role in the conspiracy, the Court finds no merit in such a contention. Michel was involved in the day-to-day banking activities and made aware of the possibility of check kiting existing and continued on in his activities. The Court, therefore, does not believe the record supports a finding that his role was minimal or minor. The fact that Michel's conduct may be slightly less culpable than his brother, Elie, has been considered by the Court in its analysis of the § 3553(a) factors. The Court, therefore, declines to exercise its discretion and depart downward.

## III. § 3553 Factors and Variance

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in exercising its judgment to determine a sentence that is sufficient, but not greater than necessary to achieve the goals of sentencing. In reaching its conclusion, the Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant. The Court must also review the need for the sentence imposed: a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; and b) to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the Defendant.

The Sixth Circuit has previously summarized the nature and circumstances of Michel

Abboud's convictions:

> Defendants are brothers who owned various "corner stores" that sold groceries and money orders, and offered check cashing services. Defendants controlled seven or eight bank accounts. At the end of each day, Defendants would take checks drawn from one of their own bank accounts, along with checks received from their customers, and deposit them in a second bank account controlled by Defendants. The checks that were drawn from Defendants' own bank accounts would not have sufficient funds to cover the check. The next day, Defendants would deposit a check from a third bank account they controlled to cover the deficit in the second bank account. This check would also be drawn from a bank account with insufficient funds to cover the check.
>
> Defendants were informed by their banks of their negative account balances. Defendants were also informed that they were engaged in check kiting, and that such conduct was illegal. "Check kiting is a systematic scheme to defraud, whereby nonsufficient checks are traded or cross deposited between two or more checking accounts in order to artificially inflate the bank account balances." *United States v. Abboud*, 438 F.3d 554, 563 n. 1 (6th Cir. 2006). "Once bank accounts are artificially inflated, checks that would normally be returned for insufficient funds are, in fact, paid or honored by the issuing bank." *Id*. The check kiting scheme was the basis for Defendants' indictment for bank fraud.
>
> The money laundering charges stemmed from Defendants "bleeding" the kite. In other words, Defendants used their artificially inflated bank account balances created by the kiting to obtain cash for their check cashing business, make loan payments, and fund their money order account.

*Abboud*, 308 Fed. Appx. at 979. Furthermore, the Court adopts the detailed review of the Abbouds' criminal scheme contained in the first appellate decision in this matter, *U.S. v. Abboud*, 438 F.3d 554 (6th Cir. 2006).

There is simply no question that between July and September of 1999, Elie and Michel Abboud engaged in a wide-ranging check kiting scheme. During the scheme, over 2500 checks in an amount approaching $385 million were written. The defendants used the scheme to effectively offer themselves an interest-free loan to run their business. In so doing, they defrauded four different banks by using sixteen different accounts.

With respect to the characteristics of the defendant, the Court notes that Michel Abboud

has a minimal criminal history, but a history nonetheless, in contrast to his brother. The Court, however, has not considered Michel's 2004 conviction in any manner in reaching its sentence. At the time of this resentencing, Michel Abboud was 53 years old with a wife and four children. The defendant is college educated and assisted his brother in operating convenience stores since roughly 1980.

Michel Abboud has argued that the §3553 factors warrant a downward variance. The Court disagrees.

First, the scope of the check kiting scheme was massive, warranting a guideline range sentence. The Court agrees that Michel's conduct is slightly less culpable than that of his brother. Elie had more direct interaction with the banking institutions and more direct involvement in the kiting and money laundering schemes. However, Michel's lesser culpability is offset by two factors. First, he committed a crime prior to the instant offense, receiving stolen property. Second, he was convicted of a firearm offense in this matter, unlike Elie. Based on those distinctions, the Court believes that the sentences issued should be on par with one another.

Based upon the above, the Court finds that a sentence at the low-end of the advisory guideline is appropriate. Consistent with its oral order, Michel Abboud is sentenced to 97 months on Counts 1 through 6, 8 through 27, 29 through 59, 62 through 72, 74, and 75. Defendant is sentenced to 60 months on Counts 28 and 73, and 12 months on Counts 78 and 79.[2] All counts are to be served concurrently for a total sentence of 97 months. The remaining terms of the sentence were set forth on the record and will not be reiterated herein.

IT IS SO ORDERED.

August 24, 2009                     /s/ John R. Adams
                                    JUDGE JOHN R. ADAMS
                                    UNITED STATES DISTRICT JUDGE

---

2 The Court inadvertently referred to these as Counts 76 and 77 during sentencing.